**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEC 2 2 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

REUBEN CANADA
533 Gresham Place, N.W.
Washington, D.C. 20001,

on his own behalf and on behalf of others similarly situated,

Plaintiff,

v.

CIVIL ACTION NO.

SAMSUNG ELECTRONICS CO. LTD.
Samsung Main Building 250-2 ga
Taepyung-ro Chung-gu, Seoul, Korea;

SAMSUNG ELECTRONICS AMERICA
105 Challenger Road
Ridgefield Park, New Jersey 07660

CASE NUMBER  1:06CV02183

JUDGE: Emmet G. Sullivan

SAMSUNG SEMICONDUCTOR, INC.
3655 North First Street
San Jose, California 95134;

DECK TYPE: Antitrust

DATE STAMP: 12/22/2006

HYNIX SEMICONDUCTOR, INC.
San 136-1 Ami-Ri Bubal-eub, Icheon-si
Kyoungki-do, Korea 467-701;

HYNIX SEMICONDUCTOR AMERICA, INC.
3101 North First Street
San Jose, California 95134;

MICRON TECHNOLOGY, INC.
8000 South Federal Way
Post Office Box 6
Boise, Idaho 83707;

MICRON SEMICONDUCTOR PRODUCTS, INC.
8000 South Federal Way
Post Office Box 6
Boise, Idaho 83707;

NEC ELECTRONICS CORPORATION
1753 Shimonumabe

JURY ACTION

1

Kawasaki Kanagawa 211-8668, Japan
NEC ELECTRONICS AMERICA, INC.
2880 Scott Boulevard
Santa Clara, California 95050;

CYPRESS SEMICONDUCTOR, INC.
198 Champion Court
San Jose, California 95134;

ALLIANCE SEMICONDUCTOR CORPORATION
2900 Lakeside Drive # 229
Santa Clara, California 95054;

FUJITSU LTD.
Shiodome City Center 1-5-2 Higashi-Shimbashi, Minato-ku
Tokyo 105-7123, Japan;

FUJITSU AMERICA, INC.
1250 Arques Ave., M/S 124
Sunnyvale, California 94085;

HITACHI LTD.
6-6  Marunouchi 1-Chome Chiyoda-ku
Tokyo, 100-8280, Japan;

HITACHI AMERICA LTD.
50 Prospect Avenue
Tarrytown, New York 10591;

MITSUBISHI ELECTRIC CORPORATION
Tokyo Building 2-7-3, Marunouchi, Chiyoda-ku
Tokyo 100-8310, Japan;

MITSUBISHI ELECTRIC & ELECTRONICS USA, INC.
5665 Plaza Drive
Post Office Box 6007
Cypress, California 90630-0007;

RENESAS TECHNOLOGY CORPORATION
Marunouchi Building, 4-1, Marunouchi 2-chome, Chiyoda-ku
Tokyo 100-6334, Japan;

RENESAS TECHNOLOGY AMERICA, INC.
450 Holger Way
San Jose, California 95134-1368;

SONY CORPORATION
6-7-35 Kitashinagawa, Shinagawa-ku
Tokyo 141-0001, Japan;

SONY CORPORATION OF AMERICA
550 Madison Avenue, 27th Floor
New York, New York 10022;

SONY ELECTRONICS, INC.
12450 W. Bernardo St.
San Diego, CA 92127;

TOSHIBA CORPORATION
1-1, Shibaura 1-chome, Minato-ku
Tokyo 105-8001, Japan;

TOSHIBA AMERICA CORPORATION
1251 Avenue of the Americas, Suite 4110
New York, New York 10020; and

TOSHIBA AMERICA ELECTRONIC COMPONENTS
9775 Toledo Way
Irvine, CA 92618-1811,

                    Defendants.

## COMPLAINT

Plaintiff, by counsel, brings this civil action for damages on his behalf and on behalf

of all others similarly situated in the District of Columbia.  For his Complaint against

Defendants, Plaintiff, upon personal knowledge as to his own acts and status, and upon

information and belief as to all other matters (the majority of information in support of

Plaintiff's claims is in Defendants' exclusive possession, custody, and control, and

Plaintiff's claims are likely to have evidentiary support after a reasonable opportunity for

discovery) alleges the following:

## JURISDICTION AND VENUE

1.      This Complaint is filed under Section 16 of the Clayton Act, 15 U.S.C. § 26, to

3

obtain injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, to recover damages under the District of Columbia's antitrust and common laws, and to recover the costs of suit, including reasonable attorneys' fees, for the injuries that Plaintiff and all others similarly situated sustained as a result of the Defendants' violations of those laws.

2.    The Court has jurisdiction over the federal claim under 28 U.S.C. §§ 1331 and 1337. The Court has jurisdiction over the state law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claim that they form part of the same case or controversy. The Court also has jurisdiction over the state law claims under 28 U.S.C. § 1332 because the amount in controversy for the Class exceeds $5,000,000, and there are members of the Class who are citizens of a different state than the Defendants.

3.    Venue is proper in this District under 15 U.S.C. § 22 and 28 U.S.C. § 1391 because Defendants reside, transact business, or are found within this District, and a substantial part of the events giving rise to the claims arose in this District.

4.    The activities of the Defendants and their co-conspirators, as described herein, were within the flow of, were intended to, and did have a substantial effect on the foreign and interstate commerce of the United States.

## DEFINITIONS

5.    As used herein, the term "Static Random Access Memory" ("SRAM") includes all types of static random access memory sold during the class period, including, without limitation, high speed SRAM, low-powered SRAM, synchronous SRAM (including both Late Write and DDR synchronous SRAM), asynchronous SRAM (including asynchronous fast SRAM), pseudo SRAM (also known as "PSRAM" or "mobile PSRAM"), DDR SRAM

4

"cellularRAM," and "slow SRAM." For purposes of this Complaint, SRAM is defined to exclude all types of dynamic random access memory ("DRAM") sold during the class period, including synchronous DRAM (SDRAM).

6.    SRAM is a type of memory that is faster and more reliable than DRAM. The term "static" is derived from the fact that SRAM does not need to be refreshed like DRAM. Whereas DRAM supports access times of about 60 nanoseconds, SRAM can support access times as low as 10 nanoseconds. Additionally, the cycle time of SRAM is much shorter than that of DRAM because it does not need to pause between accesses.

7.    SRAM is used for a variety of applications. It is used as Level 1, 2, or 3 cache on the motherboards of computers, including servers.  It is used in cellular telephones and other handheld devices; according to iSuppli Corporation data, use of SRAM for mobile communications applications increased from 30.6% in 2000 to 44% in 2002.

8.    As used herein, the term Class Period means the time period January 1, 1998 to the present.

## THE PARTIES

### *Plaintiff*

9.    Reuben Canada is a resident of the District of Columbia and has indirectly purchased SRAM that was manufactured, distributed and/or sold by one or more of the Defendants during the Class Period, and was injured by the antitrust acts alleged in this Complaint.

### *Defendants*

10.    Defendant Samsung Electronics Co. Ltd. is a business entity organized under

5

the laws of South Korea, with its principal place of business at Samsung Main Building 250-2 ga, Taepyung-ro Chung-gu, Seoul, Korea. During the time period covered by this Complaint, Defendant Samsung Electronics Co. Ltd. manufactured, sold and distributed SRAM to customers throughout the United States.

11.    Defendant Samsung Electronics America is a wholly owned and controlled subsidiary of Defendant Samsung Electronics Co. Ltd with its prinicipal place of business at 105 Challenger Road, Ridgefield Park, New Jersey 07660. During the time period covered by this Complaint, Defendant Samsung Electronics America manufactured, sold and distributed SRAM to customers throughout the United States.

12.    Defendant Samsung Semiconductor, Inc. is a wholly owned and controlled subsidiary of Defendant Samsung Electronics Co. Ltd. with its principal place of business at 3655 North First Street, San Jose, California. During the time period covered by this Complaint, Defendant Samsung Semiconductor, Inc. sold and distributed SRAM to customers throughout the United States. Samsung Electronics Co. Ltd., and Samsung Semiconductor, Inc. are referred to collectively herein as "Samsung."

13.    Defendant Hynix Semiconductor, Inc. is a business entity organized under the laws of South Korea, with its principal place of business at San 136-1, Ami-Ri Bubal-eub, Icheon-si, Kyoungki-do, 467-701 Korea. During the time period covered by this Complaint, Defendant Hynix Semiconductor, Inc. manufactured, sold and distributed SRAM to customers throughout the United States.

14.    Defendant Hynix Semiconductor America, Inc. is a wholly owned and controlled subsidiary of Defendant Hynix Semiconductor, Inc. with its principal place of business at 3101 North First Street, San Jose, California. During the time period covered

by this Complaint, Defendant Hynix Semiconductor America, Inc. sold and distributed SRAM to customers throughout the United States. Hynix Semiconductor, Inc. and Hynix Semiconductor America, Inc. are referred to collectively herein as "Hynix."

15.    Defendant Micron Technology, Inc. is a Delaware Corporation with its principal place of business at 8000 South Federal Way, Post Office Box 6, Boise, Idaho 83707. During the time period covered by this Complaint, Defendant Micron Technology, Inc. manufactured, sold and distributed SRAM throughout the United States.

16.    Defendant Micron Semiconductor Products, Inc. is a wholly owned and controlled subsidiary of defendant Micron Technology, Inc. with its principal place of business at 8000 South Federal Way, Boise, Idaho 83707. During the time period covered by this Complaint, Defendant Micron Semiconductor Products, Inc. sold and distributed SRAM to customers throughout the United States. Micron Technology, Inc. and Micron Semiconductor Products, Inc. are referred to collectively herein as "Micron."

17.    Defendant NEC Electronics Corporation (NEC) is located at 1753 Shimonumabe, Kawasaki Kanagawa 211-8668, Japan. During the time period covered by this Complaint, Defendant NEC sold and distributed SRAM to customers throughout the United States.

18.    Defendant NEC Electronics America, Inc. ("NEC") is a wholly owned and controlled subsidiary of NEC Electronics Corporation, with its principal place of business at 2880 Scott Boulevard, Santa Clara, California 95050 and its manufacturing plant in Roseville, California. During the time period covered by this Complaint, Defendant NEC sold and distributed SRAM to customers throughout the United States.

7

19.    Defendant Cypress Semiconductor, Inc. ("Cypress") is a business entity organized under the laws of California, with its principal place of business at 198 Chamption Court, San Jose, California 95134. During the time period covered by this Complaint, Defendant Cypress Semiconductor, Inc. sold and distributed SRAM to customers throughout the United States.

20.    Defendant Alliance Semiconductor Corporation ("Alliance") is a business entity organized under the laws of Delaware, with its principal place of business at 2900 Lakeside Drive #229, Santa Clara, California95054. During the time period covered by this Complaint, Defendant Alliance Semiconductor Corporation sold and distributed SRAM to customers throughout the United States.

21.    Defendant Fujitsu Ltd. is a business entity organized under the laws of Japan with its principal place of business Shiodome City Center 1-5-2 Higashi-Shimbashi, Minato-ku, Tokyo 105-7123, Japan. During the time period covered by this Complaint, Defendant Fujitsu Ltd. sold and distributed SRAM to customers throughout the United States.

22.    Defendant Fujitsu America, Inc., is a wholly owned and controlled subsidiary of Defendant Fujitsu Ltd. Fujitsu Ltd. is a business entity organized under the laws of California, with its principal place of business at 1250 Arques Ave., M/S 124 Sunnyvale, California 94085. During the time period covered by this Complaint, Defendant Fujitstu America, Inc. sold and distributed SRAM to customers throughout the United States. Fujitsu Ltd. and Fujitstu America, Inc. are referred to collectively herein as "Fujitsu."

23.    Defendant Hitachi Ltd. is a business entity organized under the laws of Japan, with its principle place of business at 6-6 Marunouchi , 1-Chome Chiyoda-ku,Tokyo, 100-8280, Japan. In April of 2003 of the semiconductor divisions of Hitachi Ltd. and

8

Mitsubishi combined to form Defendant Renesas Technology Corporation. During the time period covered by this Complaint, Defendant Hitachi Ltd. sold and distributed SRAM to customers throughout the United States.

24.    Defendant Hitachi America Ltd. is a wholly owned and controlled subsidiary of Defendant Hitachi Ltd. Hitachi America Ltd. is a business entity organized under the laws of New York, with its principal place of business at 50 Prospect Avenue, Tarrytown, New York 10591. During the time period covered by this Complaint, Defendant Hitachi America Ltd. sold and distributed SRAM to customers throughout the United States. Hitachi Ltd. and Hitachi America Ltd. are referred to collectively herein as "Hitachi."

25.    Defendant Mitsubishi Electric Corporation is a business entity organized under the laws of Japan, with its principal place of business at Tokyo Building 2-7-3, Marunouchi, Chiyoda-ku, Tokyo 100-8310, Japan. In April of 2003 the semiconductor divisions of Hitachi Ltd. and Mitsubishi combined to form Defendant Renesas Technology Corporation. During the time period covered by this Complaint, Defendant Mitsubishi Electric Corporation, Inc. manufactured, sold and distributed SRAM to customers throughout the United States.

26.    Defendant Mitsubishi Electric & Electronics USA, Inc. is a wholly owned and controlled subsidiary of defendant Mitsubishi Electric Corporation. Defendant Mitsubishi Electric & Electronics USA, Inc. is a business entity organized under the laws of Delaware, with its principal place of business at 5665 Plaza Drive, Post Office Box 6007, Cypress, California 90630-0007. During the time period covered by this Complaint, Defendant Mitsubishi Electric & Electronics USA, Inc. manufactured, sold and distributed SRAM to customers throughout the United States.

9

27.    Defendant Renesas Technology Corporation is a business entity organized under the laws of Japan with its principal place of business at Marunouchi Building, 4-1, Marunouchi 2-chome, Chiyoda-ku Tokyo 100-6334, Japan. During the time period covered by this Complaint, Defendant Renesas Technology Corporation sold and distributed SRAM to customers throughout the United States.

28.    Defendant Renesas Technology America, Inc. is a wholly owned and controlled subsidiary of Renesas Technology Corporation with its principal place of business at 450 Holger Way, San Jose, California 95134-1368. During the time period covered by this Complaint, Defendant Renesas Technology America, Inc. sold and distributed SRAM to customers throughout the United States. Defendants Renesas Technology Corporation and Renesas Technology America, Inc. are referred to collectively herein as "Renesas."

29.    Defendant Sony Corporation is a business entity organized under the laws of Japan, with its principal place of business at 6-7-35 Kitashinagawa, Shinagawa-ku, Tokyo 141-0001, Japan. During the time period covered by this Complaint, Sony Corporation sold and distributed SRAM to customers throughout the United States.

30.    Defendant Sony Corporation of America is a wholly owned and controlled subsidiary of Sony Corporation, with its principal place of business at 550 Madison Avenue, 27th Floor, New York, New York 10022. During the time period covered by this Complaint, Sony Corporation of America sold and distributed SRAM to customers throughout the United States.

31.    Defendant Sony Electronics, Inc. is a wholly owned and controlled subsidiary of Sony Corporation, with its principal place of business located at 12450 W. Bernardo St.,

10

San Diego, CA 92127. During the time period covered by this Complaint, Sony Electronics, Inc. sold and distributed SRAM to customers throughout the United States. Sony Corporation, Sony Corporation of America, and Sony Electronics, Inc. are referred to collectively herein as "Sony."

32.    Defendant Toshiba Corporation is a business entity organized under the laws of Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan. During the time period covered by this Complaint, Defendant Toshiba Corporation manufactured, sold and distributed SRAM to customers throughout the United States.

33.    Defendant Toshiba America Corporation is a wholly owned and controlled subsidiary of Toshiba Corporation with its principal place of business at 1251 Avenue of the Americas, Suite 4110 New York, New York 10020. During the time period covered by this Complaint, Defendant Toshiba America Corporation manufactured, sold and distributed SRAM to customers throughout the United States.

34.    Defendant Toshiba America Electronic Components, Inc. is a wholly owned and controlled subsidiary of Toshiba Corporation with its principal place of business located at 9775 Toledo Way, Irvine, CA 92618-1811. During the time covered by this Complaint, Defendant Toshiba America Electronic Components, Inc. sold and distributed SRAM to customers throughout the United States. Toshiba Corporation, Toshiba America Corporation, and Toshiba America Electronic Components, Inc. are referred to collectively herein as "Toshiba."

### Co-Conspirators

35.    Various others, presently unknown to Plaintiff, participated as co-conspirators

11

with the Defendants in the violations of law alleged in this Complaint and have engaged in conduct and made statements in furtherance thereof.

36.    The acts charged in this Complaint have been done by Defendants and their co-conspirators, or were authorized, ordered or done by their respective officers, agents, employees or representatives while actively engaged in the management of each Defendant's business or affairs.

37.    Each of the Defendants named herein acted as the agent or joint venturer of or for the other Defendants with respect to the acts, violations and common course of conduct alleged herein.  Each Defendant which is a subsidiary of a foreign parent acts as the sole United States agent for SRAM made by its parent company.

38.    Each defendant combined its money, skills, property and efforts with the other defendants for the common business purpose of selling SRAM at above-market prices.

## CLASS ACTION ALLEGATIONS

39.    Plaintiff brings this suit as a class action pursuant Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and a Plaintiff Class ("the Class") composed of and defined as follows:

> All persons and entities residing in the District of Columbia who, from January 1, 1998 through the present, purchased SRAM in the District of Columbia indirectly from the Defendants for their own use and not for resale.
>
> Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.
>
> Also excluded are any federal, state or local governmental entities.

12

40.    Plaintiff does not presently possess information identifying the exact size of the Class. Based upon the nature of the trade and commerce involved, Plaintiff believes the total number of class members is sufficiently numerous such that joinder of all Class members would be impracticable.

41.    Numerous questions of law or fact that arise from Defendants' anticompetitive conduct are common to the class. Among the questions of law or fact common to the class are:

a.    whether Defendants engaged in a contract, combination or conspiracy among themselves to fix, maintain or stabilize the prices of, or allocate the market for, SRAM sold in the District of Columbia,

b.    whether the conduct of Defendants caused prices of SRAM sold in the District of Columbia to be artificially inflated to non-competitive levels; and

c.    whether Plaintiff and other members of the class were injured by the conduct of Defendants and, if so, the appropriate class-wide measure of damages.

42.    These common questions of law or fact are common to the class, and predominate over any other questions affecting only individual class members.

43.    Plaintiff in this proposed class action asserts claims typical of those of the individual members of the proposed Class. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

44.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class and has no interests antagonistic to the Class. Plaintiff has suffered the same harm as the members of the Class and has, and will continue to, zealously

13

pursue claims against Defendants. Plaintiff has retained counsel competent and experienced in the prosecution of complex class actions, and in particular, counsel has broad experience in complex antitrust litigation similar in size, scope, and complexity to the present case.

45.    A class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy. The damages suffered by each individual Class member will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' conduct. Thus, it would be virtually impossible for the Class members individually to redress effectively the wrongs done to them. Moreover, even if the Class members themselves could afford such individual litigation, the judicial system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the judicial system due to the complex legal and factual issues presented by this case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## NATURE OF TRADE AND COMMERCE

46.    Throughout the period of time covered by this Complaint, Defendants and their co-conspirators engaged in the business of marketing and selling SRAM throughout the District of Columbia and the United States. During each year of the Class Period, total sales of SRAM were in the billions of dollars.

47.    The market for the manufacture and sale of SRAM is conducive to the type of collusive activity alleged here. That market is oligopolistic in nature. Samsung is the clear

14

market leader. According to the 2004 "Memory Market Backgrounder" available at its website, the shares of the leading SRAM manufacturers in 2003 were as follows:

| | |
|---|---|
| Samsung | 32.5% |
| Renesas | 15.0% |
| Cypress | 11.6% |
| Toshiba | 7.9% |
| NEC | 7.2% |
| Hynix | 3.7% |
| Sony | 4.1% |

48.    According to Samsung's 2006 "Memory Market Overview" available at its website, the shares of the top SRAM manufacturers in 2004 and 2005 were as follows:

2005

| | | |
|---|---|---|
| Samsung | 34% | 29% |
| Micron | 4% | 15% |
| NEC | 11% | 10% |
| Renesas | 6% | 5% |
| Toshiba | 6% | 5% |

49.    Samsung notes in this same document that it holds 30% of the pseudo SRAM market (SRAM used for mobile telephones) and that this segment is forecasted to grow by 33% annually through 2008.

50.    The market for the manufacture and sale of SRAM is subject to high manufacturing and technological barriers to entry. Efficient fabrication plants are large and

15

costly. SRAM is also subject to technological advances, so that firms within the industry must undertake significant research and development expenses.

51.    Defendants and co-conspirators had opportunity to conspire. As a means to further secure their respective positions within the SRAM marketplace, Samsung, Cypress, NEC and Renesas maintain membership in the Quad Data Rate (QDR) Consortium. By way of this consortium, participating companies cooperate in the development of the networking SRAMs. The QDR Consortium dates back at least as far as 1999.

52.    The SRAM industry has also been subject to significant consolidation during the Class Period. It is further exemplified by the merger in April of 2003 of the semiconductor divisions of Hitachi Ltd. and Mitsubishi. The resultant entity, Renesas is one of the leading manufacturers of SRAM.

53.    Beginning in 1998 and continuing through much of 2001, SRAM prices rose, due in significant part to the effects of the industry wide collusion now being investigated by the DOJ. During 2000 alone, the average selling price of SRAM in the United States increased by an extraordinary 33%. While SRAM prices declined somewhat during part of 2001 and in part of 2002, the cartel created by Defendants operated to mitigate those declines so that prices were still at supracompetitive levels. As SRAM prices increased again in 2003 and subsequent years, the collusive activity among the Defendants kept those prices at supracompetitive levels.

## DEFENDANTS' ILLEGAL CONDUCT

54.    In October of 2006, the Antitrust Division of the United States Department of Justice ("DOJ") sent out subpoenas to a number of companies in connection with an investigation of cartel activity in the SRAM industry during the period from January 1, 1998

16

through December 31, 2005. Those companies are: Samsung, Mitsubishi, Toshiba, Micron, Cypress, Sony, Hitachi, NEC and Renesas. A DOJ spokesperson was quoted as saying: "[t]he U.S. Department of Justice's antitrust division is conducting an investigation regarding anti-competitive practices against chief SRAM manufacturers." Several of these companies being investigated--Hynix and Samsung--have already pled guilty to price-fixing in the DRAM industry and have paid substantial fines to the DOJ for those unlawful activities ($300 million for Samsung and $185 million for Hynix). Elpida Memory, Inc., a DRAM manufacturer created by way of a joint venture between Hitachi and NEC, two of the Defendants here, was fined $84 million. Micron, another major SRAM manufacturer, was the amnesty applicant in the DRAM price-fixing investigation. Mitsubishi announced on October 16, 2006 that the Department of Justice is investigating its activities in the DRAM market, and Samsung has acknowledged that its offices in Germany were raided by the EU authorities in connection with the SRAM probe in Europe.

55.    Defendants Samsung, Mitsubishi, Toshiba, Micron, Cypress and Sony have publicly acknowledged the DOJ investigation. Toshiba referred in a press release dated October 17, 2006 to the fact that the DOJ appeared to be conducting an "industry-wide investigation." A spokesperson for Cypress has been quoted as saying that "DOJ is looking at the market and the practices involved." A Micron spokesperson effectively conceded that it was a target of the DOJ investigation, albeit not the "main target."

56.    During the period from 1994 to 1997 (the period preceding the Class Period), SRAM prices in the United States sharply declined and the industry fell from profitability into steep losses. In 1997, Micron commenced an antidumping proceeding before the Court of International Trade with respect to SRAM imports from Korea and Taiwan. Those

17

proceedings were not resolved in Micron's favor. However, these antidumping proceedings were a factor that favored collusion. Antidumping cases encourage both importers and domestic producers to raise prices—the former to avoid further antidumping claims and the latter to establish a high base price against which to evaluate their future antidumping claims against importers. The DRAM price-fixing conspiracy prosecuted by the DOJ also took place in a period following antidumping claims brought by Micron.

57.    Beginning in 1998 and continuing through much of 2001, SRAM prices rose, due in significant part to the effects of the industry wide collusion now being investigated by the DOJ. During 2000 alone, the average selling price ("ASP") of SRAM in the United States increased by 33%--from an ASP of $3.93 in 1999 to approximately $5.24 in 2000. By comparison, the ASP of SRAM in 1995-97 had dropped from $5.55 to $3.64. To the extent that SRAM prices declined somewhat during part of 2001 and in part of 2002, the cartel created by Defendants and their co-conspirators operated to mitigate those declines so that prices were still at supracompetitive levels. Indeed, SRAM prices experienced an upturn for part of 2002. As SRAM prices increased again in 2003 and subsequent years, the collusive activity among the Defendants and their co-conspirators kept those prices at supracompetitive levels.

58.    Defendants and their co-conspirators have engaged in a contract, combination, trust or conspiracy, the effect of which was to raise the prices at which they sold SRAM to artificially inflated levels.

59.    Defendants, through their officers, directors and employees, effectuated the aforesaid contract, combination, trust or conspiracy between themselves and their co-conspirators by, among other things:

18

a.    participating in meetings and conversations, including through various trade associations and committees, to discuss the prices of SRAM in the United States;

b.    agreeing, during those meetings and conversations, to charge prices at specified levels and otherwise to increase and maintain prices of SRAM sold in the United States;

c.    issuing price announcements and quotations in accordance with the agreements reached; and

d.    selling SRAM to various customers in the United States at non-competitive prices.

## ACTIVE CONCEALMENT

60.    Throughout and beyond the conspiracy, Defendants and their co-conspirators affirmatively and actively concealed their unlawful conduct from Plaintiff. Defendants and their co-conspirators conducted their conspiracy in secret and kept it mostly within the confines of their higher-level executives. Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases. Defendants and their co-conspirators conducted their conspiracy in secret, concealed the true nature of their unlawful conduct and acts in furtherance thereof, and actively concealed their activities through various other means and methods to avoid detection. Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants and their co-conspirators were violating the antitrust laws as alleged herein until shortly before this class action litigation was commenced.

19

61.    As a result of the active concealment of the conspiracy by Defendants and their co-conspirators, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## VIOLATIONS ALLEGED

## First Claim for Relief

## (Violation of Section 1 of the Sherman Act)

62.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

63.    Beginning at a time presently unknown to Plaintiff, but at least as early as January 1, 1998 and continuing through the present, the exact dates being unknown to Plaintiff, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for SRAM in the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

64.    In formulating and carrying out the alleged agreement, understanding, and conspiracy, the Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of conduct set forth above, and the following, among others:

a.    participating in meetings and conversations, including through various trade associations and committees, to discuss the prices of SRAM in the United States;

20

b.   agreeing, during those meetings and conversations, to charge prices at specified levels and otherwise to increase and maintain prices of SRAM sold in the United States;

c.   issuing price announcements and quotations in accordance with the agreements reached; and

d.   selling SRAM to various customers in the United States at non-competitive prices.

65.   The combination and conspiracy alleged herein has had the following effects, among others:

a.   Price competition in the sale of SRAM has been restrained, suppressed, and/or eliminated in the United States;

b.   Prices for SRAM sold by Defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States; and

c.   Those who purchased SRAM directly or indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

66.   Plaintiff has been injured and will continue to be injured in his business and property by paying more for SRAM purchased indirectly from the Defendants and their co-conspirators than they would have paid and will pay in the absence of the combination and conspiracy, including paying more for personal computers and other products in which SRAM is a component as a result of higher prices paid for SRAM by the manufacturers of those products.

21

67.    Plaintiff and the Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## Second Claim for Relief

## (Violation of District of Columbia Antitrust Law)

68.    Plaintiff hereby adopts and incorporates by this reference each of the preceding paragraphs as if fully set forth herein.

69.    Plaintiff and Defendants are "persons" as defined in D.C. Code. § 28-4501(a).

70.    During the Class Period, each of the Defendants named herein, directly or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed SRAM in the District of Columbia.

71.    During the Class Period, each of the Defendants named herein, directly or indirectly and through affiliates they dominated and controlled, did the following in addition to the misconduct described above to create and maintain their contract, combination or conspiracy to fix, control, maintain or stabilize prices of SRAM sold and/or distributed in the District of Columbia, in violation of D.C. Code. §§ 28-4501 *et seq.*:

   a.    Participated in meetings, conversations and communications in the United States and elsewhere with potential competitors to discuss the prices of SRAM to be sold in the District of Columbia and the United States;

   b.    Agreed, during those meetings, conversations, and communications, to charge prices of SRAM at certain levels to be sold in the District of Columbia and the United States;

   c.    Issued price quotations in accordance with the agreements reached; and

22

d.    Exchanged information on sales of SRAM to customers, for the purpose of monitoring and enforcing adherence to the agreed-upon prices.

72.    This horizontal price-fixing conspiracy substantially affected the people of the District of Columbia and restrained trade or commerce in the District of Columbia, and was designed to have, and did have, a substantial and adverse impact on prices for SRAM in the District of Columbia during the Class Period.

73.    As a result, Plaintiff and other members of the Class have been injured in their business or property, and have sustained damages in an amount to be determined at trial.

## Third Claim for Relief

### (Unjust Enrichment and Disgorgement of Profits)

74.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

75.    Defendants have been unjustly enriched through overpayments by Plaintiff and Class members and the resulting profits.

76.    Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred via overpayments by Plaintiff and Class members.

77.    Plaintiff seeks disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class members may seek restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

A.    That the Court determine that the Sherman Act, the District of Columbia state antitrust law, and common law claims alleged herein may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure;

B.    That the unlawful conduct, contract, conspiracy or combination alleged herein be adjudged and decreed to be:

> a.  A restraint of trade or commerce in violation of Section 1 of the Sherman Act, as alleged in the First Claim for Relief;
>
> b.  An unlawful combination, trust, agreement, understanding, and/or concert of action in violation of the District of Columbia antitrust law as identified in the Second Claim for Relief herein; and
>
> c.  Acts of unjust enrichment as set forth in the Third Claim for Relief herein.

C.    That Plaintiff and members of the Class recover damages, as provided by federal and District of Columbia antitrust laws, and that a joint and several judgment in favor of Plaintiff and the Class be entered against the Defendants in an amount to be trebled in accordance with such laws, including D.C. Code. § 28-4507;

D.    That Plaintiff and members of the Class recover the maximum civil penalties provided by law and that a judgment in favor of Plaintiff and the Class be entered against each Defendant in such an amount;

E.    That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from in any manner: (1) continuing, maintaining, or renewing the conduct, contract, conspiracy or combination alleged herein, or from entering into any other conspiracy alleged herein, or

24

from entering into any other contract, conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect; and (2) communicating or causing to be communicated to any other person engaged in the sale of SRAM, information concerning bids of competitors;

F.     That Plaintiff and the Class be awarded restitution, including disgorgement of profits obtained by Defendants as a result of their acts of unfair competition and acts of unjust enrichment;

G.     That Plaintiff and members of the Class be awarded pre- and post-judgment interest, and that that interest be awarded at the highest legal rate from and after the earliest date permitted by law;

H.     That Plaintiff and members of the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law; and

I.     That Plaintiff and members of the Class have such other, further, and different relief as the case may require and the Court may deem just and proper under the circumstances, including punitive damages.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,
PLAINTIFF,
BY Counsel

Jonathan K. Tycko (DC Bar ID # 445851)
Hassan A. Zavareei (DC Bar ID # 456161)
Tycko & Zavareei LLP
2000 L Street, N.W., Suite 808
Washington, D.C. 20036
(202) 973-0900
(202) 973-0950 *facsimile*

25

Brian A. Glasser
Eric B. Snyder
Bailey & Glasser, LLP
227 Capitol Street
Charleston, West Virginia 25301
(304) 345-6555
(304) 342-1110 *facsimile*

Renae D. Steiner
Gustafson Gluek, PLLC
650 Northstar East
608 Second Avenue South
Minneapolis, Minnesota 55402
(612) 333-8844
(612) 339-6622 *facsimile*

*06-2183 EGS*

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Reuben Canada

11001

## DEFENDANTS

Samsung Electronics Co., Ltd.; Samsung Semiconductor, Inc.; Hynix Semiconductor America, Inc.; Micron Technology, Inc.; Micron Semiconductor Products, Inc.; NEC Electronics America, Inc.; Cypress Semiconductor, Inc.; Alliance Semiconductor Corporation; Fujitsu Ltd.; Fujitsu America, Inc.; Hitachi Ltd.; Hitachi America, Ltd.; Mitsubishi Electric Corporation; Mitsubishi Electric & Electronics USA, Inc.; Renesas Technology Corporation; Renesas Technology America, Inc.; Sony Corporation; Sony Corporation of America; Sony Electronics, Inc.; Toshiba Corporation; Toshiba America Corporation; and Toshiba America Electronic Components

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___11001___
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ___99999___
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Jonathan K. Tycko
Tycko & Zavareei LLP
2000 L Street, N.W., Suite 808
Washington, D.C. 20036
(202) 973-0900

CASE NUMBER   1:06CV02183

JUDGE: Emmet G. Sullivan

DECK TYPE: Antitrust

DATE STAMP: 12/22/2006

*JURY ACTION*

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

◉ 3 Federal Question (U.S. Government Not a Party)

○ 2 U.S. Government Defendant

○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

◉ **A. Antitrust**

☒ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**          OR          ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

(25)

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General** ☐ **510 Motion/Vacate Sentence** | ☐ **442 Civil Rights-Employment** (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ **895 Freedom of Information Act** ☐ **890 Other Statutory Actions** (if Privacy Act) *(If pro se, select this deck)* | ☐ **152 Recovery of Defaulted Student Loans** (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ **710 Fair Labor Standards Act** ☐ **720 Labor/Mgmt. Relations** ☐ **730 Labor/Mgmt. Reporting & Disclosure Act** ☐ **740 Labor Railway Act** ☐ **790 Other Labor Litigation** ☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)** ☐ **443 Housing/Accommodations** ☐ **444 Welfare** ☐ **440 Other Civil Rights** ☐ **445 American w/Disabilities-Employment** ☐ **446 Americans w/Disabilities-Other** | ☐ **110 Insurance** ☐ **120 Marine** ☐ **130 Miller Act** ☐ **140 Negotiable Instrument** ☐ **150 Recovery of Overpayment & Enforcement of Judgment** ☐ **153 Recovery of Overpayment of Veteran's Benefits** ☐ **160 Stockholder's Suits** ☐ **190 Other Contracts** ☐ **195 Contract Product Liability** ☐ **196 Franchise** | ☐ **441 Civil Rights-Voting** (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
Defendants and their co-conspirators engaged in a conspiracy to restrain trade in the SRAM market in violation of 15 U.S.C. § 1 and common law.

| **VII. REQUESTED IN COMPLAINT** | ☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** 10,000,000 **JURY DEMAND:** | Check YES only if demanded in complaint YES ☒ NO ☐ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY** (See instruction)   YES ☒   NO ☐   If yes, please complete related case form.

DATE 12/22/06    SIGNATURE OF ATTORNEY OF RECORD _[signature]_

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

**I.**   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

**III.**   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.**   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

**VI.**   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.**   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.